United States District Court
District of Massachusetts

```
_____
                               )
Thomas Dusel,                  )
                               )
        Plaintiff and Defendant )
in Counterclaim,               )
                               )
        v.                     )    Civil Action No.
                               )    19-11698-NMG
Factory Mutual Insurance Company, )
d/b/a FM Global,               )
                               )
        Defendant and Plaintiff )
in Counterclaim.               )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

This suit arises out of the termination of Thomas Dusel ("Dusel" or "plaintiff") from the employ of Factory Mutual Insurance Company, d/b/a FM Global ("FM Global" or "defendant"). Pending before the Court are cross motions for summary judgment, plaintiff's motion to dismiss Counterclaim I and numerous related motions filed by plaintiff.

I.   **Background**

   A.  **The Parties**

   FM Global is a commercial property insurer with a principal place of business in Rhode Island.  Hobbs Brook Management ("HBM") is a wholly owned subsidiary of FM Global located in

Waltham, Massachusetts.  HBM develops, owns and operates offices
and life science facilities in the greater Boston area and
provides real estate management services for properties owned by
FM Global.

Dusel is a resident of Boxford, Massachusetts.  He was
hired by FM Global in 1983 and eventually became the President
and Chief Financial Officer ("CEO") of HBM.  He served in that
role until he was fired in September, 2018.  As CEO, he had
several employees report directly to him including Kevin Casey,
Vice President of Leasing and Construction, and Michael Valli,
Vice President of Food Services and Facilities.

**B.  Human Resources Complaints About Mr. Casey**

In 2015, Patricia Holland, an employee who reported to Mr.
Casey, filed a complaint with the Human Resources Department
("HR") at FM Global alleging that Mr. Casey had acted
inappropriately and had harassed her.  HR conducted an
investigation and decided not to discipline Mr. Casey.  Dusel
testified at his deposition that he disagreed with the findings
of the investigation and informed HR of his disagreement.

In February, 2018, Ms. Holland filed another complaint with
HR concerning Mr. Casey's workplace behavior.  Dusel claims to
have reported Ms. Holland's concerns to his supervisor at the

parent corporation and to the Chief Financial Officer of FM Global prior to the filing of the complaint.  During the subsequent investigation, Dusel was interviewed several times and reported that he had observed Mr. Casey act aggressively toward both male and female employees.

Corporate leadership concluded that Mr. Casey had not violated workplace violence or discrimination policies but decided to transfer the entire HBM senior management team to the headquarters of FM Global in Johnston, Rhode Island.  Defendant asserts the transfer was necessary to ensure a positive work environment but Dusel insists that it was an attempt to force the members of the HBM management team to quit.

### C.  Investigation of HBM's Verizon Account

In July, 2018, FM Global began an audit of the Verizon account for HBM after Mr. Lalli asked to retain his cell phone even though he was leaving the company.  The audit led to the discovery that several employees, including Dusel, had multiple active cell phone numbers being charged to the company account. Further investigation revealed that personal phones belonging to Dusel's wife and daughter had been charged to the company account for years.

Dusel concedes that he never reimbursed HBM for the cell phone service used by his family members for several years but asserts that he intended to repay the company as soon as he was billed. He also states that, once FM Global shared its concerns about his family's cell phone charges, he transferred the phone lines to a personal account in order to comply with company policy.

Approximately one month later, investigators asked Dusel whether he had any family members on the HBM Verizon plan, to which he responded in the negative. He later testified that he did not inform investigators about the recent transfer of phone lines because they did not explicitly ask about it.

In August, 2018, FM Global released a report in which it concluded that Dusel had been charging the phone service of multiple family members to HBM and that he had not been truthful during the investigation. Dusel responds that he was not untruthful but rather simply confused about the phone lines.

### D. Alleged Theft of Company Property & Plaintiff's Termination

During the investigation into HBM's Verizon Account, FM Global learned that Dusel had frequently visited an office building owned by HBM in Wakefield, Massachusetts ("the Wakefield Facility") during non-business hours. Security camera

footage captured plaintiff entering the building's cafeteria carrying an empty bag and leaving minutes later with what appeared to be a full bag.  Further investigation revealed that plaintiff had entered the Wakefield Facility during non-business hours on 87 occasions over a two-year period.

Defendant asserts that plaintiff had no reason to be in that building because it was leased to a third party tenant and HBM did not occupy any part of it.  Defendant concluded that Dusel had entered the building to steal food and/or other items and consequently terminated his employment in September, 2018.

### E.  Procedural History

In July, 2019, Dusel filed a complaint in the Massachusetts Superior Court for Middlesex County alleging age discrimination (Count I) and retaliation (Count II) in violation of M.G.L. c. 151B, § 4(1B) and (4) against FM Global.  Shortly thereafter, defendant removed the action to this Court on the basis of diversity jurisdiction.

In its answer, FM Global asserted counterclaims for 1) misappropriation, 2) waste of corporate assets, 3) conversion, 4) unjust enrichment and 5) breach of fiduciary duty.

In April, 2021, both parties moved for summary judgment. FM Global seeks summary judgment with respect to each of plaintiff's claims under M.G.L. c. 151B, § 4 and Dusel seeks summary judgment as to each of the counterclaims asserted by defendant.  Plaintiff also moved to dismiss the first of defendant's counterclaims for failure to state a claim and has filed several other motions seeking to strike or exclude certain evidence and facts proffered by defendant in support of its motion for summary judgment.

## II.  Motions to Strike and Exclude Evidence

The Court will first address the five motions filed by plaintiff requesting that certain evidence proffered by defendant be stricken or excluded from all further proceedings.

### A.  Motion to Exclude

Plaintiff moves to exclude certain pornographic and sexually explicit materials identified and produced by defendant from being utilized in any further proceedings.  Dusel contends that such evidence, which was discovered after the termination of his employment by FM Global, is irrelevant to his claims and presents a significant risk of unfair prejudice.  He also submits that FM Global cannot show that it constitutes after-acquired evidence.  Defendant responds that the evidence is

highly relevant to all claims and counterclaims and does
constitute after-acquired evidence.

The after-acquired evidence doctrine

> permits an employer to show that later-discovered but
> legitimate reasons for taking adverse employment
> action against an employee, if they had been known at the time,
> would have justified or mitigated the employer's otherwise
> impermissibly discriminatory action (e.g., discharge)
> relating to that employee, and can serve to limit the
> employee's recovery.

City of Springfield v. Civil Service Commission, 469 Mass. 370,
378 n.14 (2014).  The doctrine serves to limit an employee's
recovery by cutting off front and back pay at the time that the
employer discovers the evidence. Johnson v. Spencer Press of
Me., Inc., 364 F.3d 368, 382 n.14 (1st Cir. 2004).

Although Massachusetts law has neither expressly adopted
nor rejected the after-acquired evidence doctrine, the First
Circuit Court of Appeals has permitted such evidence to be
considered only to assess damages and not liability. See Heagney
v. Wong, 915 F.3d 805, 820-21 (1st Cir. 2019) (citing Nieves-
Villanueva v. Soto-Rivera, 133 F.3d 92, 101 (1st Cir. 1997)).
To rely on after-acquired evidence, an employer must establish
that the wrongdoing was sufficiently severe to warrant the
discharge of the employee "on those grounds alone" had the
employer known of it at the time of discharge. McKennon v.
Nashville Banner Pub. Co., 513 U.S. 352, 362-63 (1995).

Here, the evidence at issue qualifies as after-acquired evidence. Dusel cannot seriously contend that FM Global would not have been justified in terminating his employment had they discovered that he had accessed and stored a large amount of pornographic and other sexually explicit materials at work. Even if FM Global did not explicitly prohibit viewing and storing pornography on company property, a reasonable employee would anticipate that such conduct could be grounds for termination. In any event, defendant's Preventing Discrimination and Harassment Policy states that displaying images of a sexual nature may constitute sexual harassment and may subject offenders to discharge.

Furthermore, the evidence is clearly relevant to plaintiff's claims because it could have the effect of limiting any potential damages suffered by Dusel for the alleged discrimination and retaliation. Although summary judgment will be entered in favor of FM Global on Dusel's complaint (addressed in detail below), the evidence is also clearly relevant to the counterclaims because defendant alleges improper expenditure of company funds due, in part, to the retention of a third party vendor purportedly as a result of the download of pornography to plaintiff's computer.

Accordingly, the Court will not foreclose defendant from offering such evidence at trial in support of its counterclaims. Plaintiff's motion to file a reply to the opposition of defendant will be allowed but, because the Court understands and has considered the arguments to be raised by Dusel based upon the content of that motion, his motion to exclude the after-acquired evidence will be denied.

## B. Motions to Strike

Plaintiff has also filed four motions requesting that this Court strike the affidavits of Robert Fitzpatrick, Kevin Ingram and Erik Waal as well as certain paragraphs from defendant's statement of material facts.

The Court will not strike the affidavits proffered by FM Global. Despite Dusel's claims to the contrary, Mr. Fitzpatrick was disclosed in the discovery responses of the defendant and plaintiff has not demonstrated that the delayed disclosure was harmful. See Cavanagh v. Taranto, 95 F. Supp. 3d 220, 230 (D. Mass. 2015) ("[A]n unjustifiably delayed disclosure will merit exclusion of the delayed evidence under Rule 37(c) only if the delay also causes some harm or prejudice to the opposing party."). Nor does Mr. Fitzpatrick's affidavit contain expert opinions. With respect to the affidavits of Mr. Ingram and Mr. Waal, defendant's opposition to the motions to strike

demonstrates that Dusel's arguments are without merit and the challenged portions of the affidavits will not be striken.

The Court also finds that Dusel overreaches with his final motion to strike.  To the extent that plaintiff believes defendant has included legal conclusions or facts unsupported by the evidence in its statement of material facts, he has had the opportunity to respond with his own statement of material facts and to contest the facts proffered by defendant.  For that reason, the Court will not strike the requested portions of defendant's material facts.

### III. **Motion to Dismiss**

#### A. **Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011). A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12. Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

Plaintiff moves to dismiss Counterclaim I which alleges that he misappropriated assets belonging to the company. He contends that FM Global failed to state a claim upon which relief can be granted because, according to Dusel, Massachusetts law permits such claims only for misappropriation of trade secrets or likeness. Because defendant has not alleged facts to support a claim of misappropriation of trade secrets or likeness, plaintiff submits that its counterclaim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

As a preliminary matter, a review of Massachusetts state court decisions reveals that such courts routinely deal with state law misappropriation claims outside of the two narrow

contexts noted by plaintiff. See, e.g., Our Lady of the Sea Corp. v. Borges, 40 Mass. App. Ct. 484, 484-90 (1996) (affirming damages awarded for claim of misappropriation of corporate assets); Crosslight Org. v. Williams, No. CA BRCV2000-01135, 2001 Mass. Super. LEXIS 315, at *16 (July 30, 2001) (imposing a constructive trust to remedy misappropriation of funds by company's former accountant); Custom Kits Company, Inc. v. Tessier, 97 Mass. App. Ct. 385, (2020) (recognizing breach of fiduciary duties based upon misappropriation of corporate funds).  Plaintiff cites no cases that suggest misappropriation claims are subject to dismissal outside of the trade secrets and likeness contexts.

Furthermore, FM Global has alleged facts sufficient to state a claim for misappropriation which is defined as

> [t]he application of another's property or money dishonestly to one's own use.

Black's Law Dictionary (11th ed. 2019).  FM Global alleges, and the Court accepts as true for the purpose of the pending motion, that Dusel, inter alia, used company funds to pay for personal cell phone plans and a DirectTV subscription, stole food and other company property on multiple occasions and charged the company for personal hotel and food expenses without a valid business purpose.  If proven, such allegations demonstrate that

Dusel misappropriated property and money belonging to FM Global for his own personal use.  As a result, plaintiff's motion to dismiss will be denied.

## IV.  <u>Motions for Summary Judgment</u>

### A.  Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." <u>Mesnick</u> v. <u>Gen. Elec. Co.</u>*,* 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside</u> v. <u>Osco Drug, Inc.</u>*,* 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>*,* 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that

there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
appropriate if, after viewing the record in the non-moving
party's favor, the Court determines that no genuine issue of
material fact exists and that the moving party is entitled to
judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

## B.  Defendant's Motion for Summary Judgment

### 1. Age Discrimination (Count I)

Massachusetts law forbids employers from discriminating
against or terminating employees on the basis of age. See M.G.L.
c. 151B, § 4(1B).  When direct evidence of age discrimination is
unavailable, Massachusetts courts apply the burden-shifting
framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973).  Under this framework, the plaintiff must first
establish a prima facie case of discrimination by demonstrating
that he or she

> (1) was a member of the class protected by G. L. c. 151B
> (that is, over forty years of age); (2) had performed [his
> or] her job at an acceptable level; (3) was terminated; and
> (4) was replaced by a similarly or less qualified younger
> person.

- 14 -

Knight v. Avon Prods., 438 Mass. 413, 420-21 (2003).

Once a prima facie case has been made, the burden shifts to the defendant to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for its employment action. See Blare v. Husky Injection Molding Sys. Boston, 419 Mass. 437, 441 (1995).  If it does so, the plaintiff must then produce evidence demonstrating that the defendant's stated reason was pretext. Id. at 443-45.

Defendant submits that summary judgment is proper as to Count I of plaintiff's complaint because 1) plaintiff cannot establish a prima facie case of age discrimination, 2) FM Global had legitimate, nondiscriminatory reasons for terminating plaintiff's employment, and 3) plaintiff cannot demonstrate pretext.

### a. **Prima Facie Case**

FM Global first contends that Dusel cannot succeed on his age discrimination claim because he did not perform his job at an acceptable level.

The evidence indicates that there is no genuine dispute as to whether plaintiff can establish a prima facie case of age discrimination.  Defendant has offered investigative reports showing that Dusel improperly charged HBM's Verizon account for

personal phones and purportedly stole food items from the
Wakefield Facility, demonstrating that he engaged in "financial
malfeasance, theft and dishonesty."  The company has also
provided deposition testimony from several of Dusel's
supervisors and the 2018 HR investigation report concluding that
there were systemic communication and support issues among
senior management of HBM to demonstrate that Dusel was unable to
manage his staff adequately.

Dusel has not met his burden in response.  He highlights
years of positive performance reviews and the fact that he was
never formally investigated or disciplined until the final year
of his employment as evidence that he performed his job
adequately.  Years of positive performance do not, however,
create a genuine dispute as to an employee's performance at the
time of his termination.  Dusel ignores the evidence that, in
his final year with the company, FM Global discovered 1) that he
had improperly charged the company for personal phone lines and
other expenses, 2) that he had problems managing his staff and
3) security camera footage of Dusel entering company-owned
property outside of business hours and for no legitimate
business purpose.

Dusel further declares that it is "simply nonlogical [sic]"
and "astonishing" for FM Global to claim that he did not perform

his job adequately considering that he was paid hundreds of thousands of dollars in salary and even more in bonus compensation.  This Court fails to comprehend how plaintiff's compensation supports his position that he performed his job adequately.  Although the extent of an employee's compensation may reflect his general value to the employer, it bears little relation to the day-to-day performance of his job.  Employees with larger salaries are not inherently less likely to underperform than others.

### b. Nondiscriminatory Reasons & Pretext

Even if plaintiff could establish a <u>prima</u> <u>facie</u> case of age discrimination, defendant has articulated legitimate, nondiscriminatory reasons to terminate his employment, shifting the burden back to Dusel to demonstrate that such reasons are pretextual.  He has not met that burden either.

Dusel's claim of age discrimination appears to rest entirely on evidence that Mr. Casey, a younger employee, was not fired despite charging personal phone lines to the company and violating a policy against hiring relatives.  Such evidence is insufficient to permit a reasonable finder of fact to infer discrimination on the basis of age.  Aside from the fact that Mr. Casey was not in the same position of authority as plaintiff, Mr. Casey has not been accused of the kind of

misconduct which led to Dusel's termination, such as the theft of items from the Wakefield Facility.  Furthermore, FM Global has proffered evidence indicating that Mr. Casey hired his relatives before the anti-nepotism policy of the company was put in place and that those individuals were discharged immediately after an investigation.

Based upon the evidence of record, no rational factfinder could conclude that age was a determining factor in the decision of FM Global to terminate Dusel's employment.  Accordingly, defendant is entitled to summary judgment in its favor on Count I of the complaint.

### 2. Retaliation (Count II)

Massachusetts law prohibits employers from retaliating against employees who raise concerns about discriminatory treatment. See M.G.L. c. 151B, § 4(4)-(4A).  The burden-shifting framework applicable to retaliation claims is identical to that of age discrimination claims: plaintiff must demonstrate a prima facie case of retaliation, after which defendant must articulate a legitimate, nondiscriminatory reason for the adverse action and, finally, plaintiff must show that the articulated reason is pretextual. See Griffin v. Adams & Assocs., No. 14-12668-DJC, 2016 U.S. Dist. LEXIS 83760, at *23-24 (D. Mass. June 28, 2016).

To establish a <u>prima</u> <u>facie</u> case of retaliation, the plaintiff must show that 1) he engaged in protected conduct, 2) he suffered some adverse action and 3) a causal connection exists between the protected conduct and the adverse action. <u>Psy-Ed Corp.</u> v. <u>Klein</u>, 459 Mass. 697, 706-07 (2011).

FM Global contends that it is entitled to judgment as a matter of law with respect to Dusel's claim of retaliation because plaintiff did not engage in protected activity by merely participating in the internal investigations of alleged misconduct.  Even if he did engage in protected activity, defendant asserts that there is no causal connection between such activity and his termination.

### a. Protected Activity

Under M.G.L. c. 151B, § 4(4), an individual has engaged in protected activity if

> he has opposed any practices forbidden under this chapter or [if] he has filed a complaint, testified or assisted in any proceeding under [the statute].

M.G.L. c. 151B, § 4(4).  That description includes two kinds of protected activity: "opposition" and "participation." <u>Morris</u> v. <u>Boston Edison Co.</u>, 942 F. Supp. 65, 69 (D. Mass. 1996).

It is undisputed that Dusel did not engage in the latter form of protected activity because the participation clause

applies solely to external or formal as opposed to internal
or informal investigations and proceedings.

Id. at 70.  Instead, Dusel submits that he "opposed
discrimination and discriminatory practices" when supporting Ms.
Holland's complaints and thus engaged in protected activity.

The Court is skeptical that Dusel did, in fact, engage in
protected activity but acknowledges that it is a close call.
Although plaintiff's reporting of the concerns of Ms. Holland to
his supervisors in 2018 does not rise to the level of protected
activity, his voicing of disagreement with the outcome of the
investigation into the 2015 complaint likely qualifies as
opposition to practices forbidden by the Massachusetts
discrimination statute.

### b. Causal Connection

Assuming arguendo that Dusel engaged in protected activity,
there is no causal link between that activity and his subsequent
discharge.  A causal connection may be inferred where an adverse
action is taken against a satisfactorily performing employee
immediately after the employer becomes aware of his or her
protected activity. See Mole v. Univ. of Mass., 442 Mass. 582,
592 (2004).  Even so, the temporal proximity between the
protected activity and the adverse action must be "very close"
to support such an inference. Id. at 595.

Here, Dusel's alleged protected activity took place three years before he was fired.  Such an interval between the two events will not support an inference of causation. <u>See</u> <u>Oliver</u> v. <u>Digital Equip. Corp.</u>, 846 F.2d 103, 110-11 (1st Cir. 1988) (causation not shown where firing occurred more than two years after protected activity).  Even if plaintiff's conduct with respect to the 2018 complaint constituted protected activity, the six-month hiatus between his report and his discharge is too attenuated to infer a causal relationship, especially when the intervening findings of misconduct are considered. <u>See, e.g.</u>, <u>Baker</u> v. <u>Coxe</u>, 52 F. Supp. 2d 244, 252 (D. Mass. 1999) ("[A]llegedly retaliatory acts separated by intervals of even three to six months are not temporally close enough to support an inference of causal connection.") (internal quotation marks omitted).

Dusel has not presented evidence from which a reasonable jury could infer that FM Global's articulated reasons for his discharge did not form the real basis for its employment decision.  For that reason, defendant's motion will be allowed as to Count II of the complaint.

### C.  Plaintiff's Motion for Summary Judgment

#### 1. Misappropriation (Counterclaim I)

Plaintiff seeks summary judgment as to defendant's claim of misappropriation for the same reason raised in his motion to dismiss, namely that there is no recognized general misappropriation claim under Massachusetts law.  That contention has been addressed and rejected above with respect to plaintiff's motion to dismiss.  Consequently, Dusel is not entitled to summary judgment as to Counterclaim I on that ground.

#### 2. Waste of Corporate Assets (Counterclaim II)

An officer of director of a corporation is liable for waste of corporate assets when that person removes or diverts corporate assets for which the corporation receives no benefit. Henderson v. Axiam, Inc., No. 96-2572-D, 1999 Mass. Super. LEXIS 580, at *162 (June 22, 1999).

Dusel contends that it was customary to expense hotel food and beverages to the company.  He also states that FM Global failed to investigate similar expenses charged by other employees and, compared to the actions of other employees, plaintiff's purported waste was minimal.

Plaintiff is not entitled to summary judgment.  Even if the hotel charges did not constitute waste, defendant alleges that plaintiff used corporate asserts without benefit to FM Global in a variety of other ways, including through personal cell phone expenses, a DirectTV subscription, stolen food items and the retention of a third party vendor to install a separate computer server in his office.  Furthermore, the failure of FM Global to investigate other purported instances of waste and the extent of plaintiff's waste do not relieve him of potential liability as a matter of law.

Accordingly, plaintiff's motion will be denied as to Counterclaim II.

### 3. Conversion (Counterclaim III)

To prevail on a claim of conversion, a claimant must demonstrate that the opposing party

> intentionally or wrongfully exercised acts of ownership, control, or dominion over personal property to which he has no right of possession at the time.

In re Brauer, 452 Mass. 56, 67 (2008).

Dusel claims entitlement to judgment as a matter of law on FM Global's conversion counterclaim because, according to him, only physical property can be the subject of a conversion claim. Although intangible property may not constitute the basis of a

conversion claim, see Fordham v. Boston Univ. Bd. of Trs., No. 15-P-1475, 2016 Mass. App. Unpub. LEXIS 1206, at *5 (Dec. 15, 2016), "[m]oney is personal property which may be converted." Independence Seaport Museum v. Carter, 2008 Mass. Super. LEXIS 338, at *18 (Aug. 15, 2008).  Here, FM Global has demonstrated that Dusel improperly appropriated specific items and funds from it for personal use.  Because Dusel has not proffered evidence to establish a genuine dispute of material fact as to the claim of conversion, his motion will be denied with respect to Counterclaim III.

### 4. Unjust Enrichment (Counterclaim IV)

Under Massachusetts law, a claim of unjust enrichment requires "unjust enrichment of one party and unjust detriment to another party." Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 552 F.3d 47, 57 (1st Cir. 2009).  Specifically, a claimant must establish

> (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value.

Id.

In arguing for summary judgment, Dusel clearly misinterprets the elements of a claim of unjust enrichment.

He asserts that FM Global cannot meet its burden because the benefits conferred upon him were obtained without the knowledge or consent of FM Global.  Whether FM Global had knowledge of a conferral of benefits is irrelevant, however, because Dusel, as the defendant in counterclaim, is the party who must have had an appreciation or knowledge of the alleged benefit.  FM Global has proffered evidence, including Dusel's own testimony, indicating that Dusel understood that he had received benefits from FM Global without compensation.

Dusel also repeats his argument that he cannot be held liable for his own alleged misconduct because other employees of FM Global engaged in even more serious misconduct.  The actions of other employees do not affect whether Dusel unjustly enriched himself to the detriment of FM Global.  Plaintiff thus has not demonstrated that he is entitled to summary judgment and his motion will be denied as to Counterclaim IV.

### 5. Breach of Fiduciary Duty (Counterclaim V)

To prevail on a claim for breach of fiduciary duty, FM Global must establish

> (1) the existence of a fiduciary duty; (2) breach of
> that duty; (3) damages; and (4) a causal connection
> between breach of the duty and the damages.

Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass.

App. Ct. 835, 842 (2017).  Dusel contends that FM Global

has not demonstrated that he acted as a fiduciary of

defendant and has thus failed to establish the requisite

prima facie case.

Plaintiff is not entitled to summary judgment on

defendant's counterclaim for breach of fiduciary duty.

There is no serious debate that Dusel, as President and CEO

of HBM, acted as a fiduciary of defendant. See, e.g.,

Geller v. Allied-Lyons PLC, 42 Mass. App. Ct. 120, 122

(1997) (stating that officers and directors owe a fiduciary

duty to their corporations and that senior executives are

considered corporate fiduciaries).  Dusel's other arguments

in favor of summary judgment are conclusory and

unsubstantiated by the evidence of record.

Plaintiff's motion, therefore, will be denied as to

Counterclaim V.

## V.   **Motion to Bifurcate Trial**

Finally, plaintiff moves to bifurcate trial into two

phases, one for determining liability and one for the

- 26 -

calculation of damages.  He contends that the after-acquired evidence to be presented by defendant, namely the pornographic and sexually explicit materials allegedly found in Dusel's office, are relevant only for calculating damages and would be unfairly prejudicial during the liability phase of the case.

In light of the above determinations by the Court to deny Dusel's motion to exclude the after-acquired evidence and to allow the motion of FM Global for summary judgment, the bifurcation of trial is unnecessary.  The motion will, therefore, be denied.

**ORDER**

For the foregoing reasons,

(a)   the motion of plaintiff, Thomas M. Dusel ("Dusel"), to exclude certain after-acquired evidence (Docket No. 102) is **DENIED;**

(b)   the motion of Dusel for leave to file a reply (Docket No. 106) is **ALLOWED;**

(c)   the motions of Dusel to strike the affidavits of Robert Fitzpatrick (Docket No. 111), Kevin Ingram (Docket No. 112) and Erik Waal (Docket No. 113) as well as certain paragraphs from defendant's statement of material facts (Docket No. 114) are **DENIED;**

(d)   the motion of Dusel to dismiss Count I of the counterclaims asserted by defendant, Factory Mutual Insurance Company, d/b/a FM Global ("FM Global"), for failure to state a claim (Docket No. 97) is **DENIED;**

(e)   the motion of Dusel for summary judgment on FM Global's counterclaims (Docket No. 92) is **DENIED;**

    (f)    the motion of FM Global for summary judgment on plaintiff's affirmative claims (Docket No. 83) is **ALLOWED;** and

    (g)    plaintiff's motion to bifurcate trial (Docket No. 126) is **DENIED.**

To the extent these rulings conflict with the Order previously entered by this Court (Docket No. 129), this Order controls.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 14, 2021